UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMB BANK, N.A.,<br><br>        Plaintiff,<br><br>        v.<br><br>CAESARS ENTERTAINMENT CORPORATION,<br><br>        Defendant. | No. 1:15-cv-04634-SAS<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW OF CAESARS
ENTERTAINMENT CORPORATION IN OPPOSITION TO
<u>UMB BANK, N.A'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 492-0020

FRIEDMAN KAPLAN
SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Fax: (212) 833-1250

*Attorneys for Caesars Entertainment Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

    I.      The Indentures and the Guarantee ............................................................................... 3

    II.     The Challenged Transactions...................................................................................... 4

    III.    The Restructuring Support Agreement ....................................................................... 5

ARGUMENT ............................................................................................................................... 5

CONCLUSION ............................................................................................................................ 7

Caesars Entertainment Corporation ("CEC") respectfully submits this memorandum of law in opposition to the motion for partial summary judgment filed by Plaintiff UMB Bank, N.A. ("UMB") (the "Motion").

## PRELIMINARY STATEMENT

UMB's Motion should be denied because it suffers from each of the dispositive defects that CEC has addressed in its opposition to the near-identical motion for partial summary judgment brought by BOKF, N.A ("BOKF").

UMB said in its pre-motion letter that the relevant indenture provisions "are substantially identical, as are the [challenged] transactions," and that the cases involve a "substantial identity of legal and factual issues." (UMB Dkt. No. 11 at 1, 2.) Indeed, UMB challenges the exact same transactions that BOKF does, the Indentures governing the UMB Notes contain materially identical terms concerning the circumstances under which CEC's guarantee (the "Guarantee") could be released, and UMB's brief expressly "join[ed] in and incorporate[d] by reference" all of the arguments made by BOKF in its motion (UMB Br. 1). The remainder of UMB's brief addressed certain facts specific to the UMB Holders but, except as discussed further in this opposition, did nothing more than restate arguments that were made by BOKF.

Like BOKF, UMB has abandoned both of the central pillars of the arguments made to the Court prior to the filing of the motions. Just as BOKF did, UMB argued that it would demonstrate that CEC's release of the Guarantee on the UMB Notes was part of an "out-of-court restructuring" (*id.* at 2), and in seeking leave to file its motion after BOKF was permitted to do so, UMB did not disagree with BOKF's contention in its pre-motion letter that the undisputed facts would show that "at the time" the challenged transactions were undertaken CEOC was "unable" to pay its debts (BOKF Dkt. No. 20 at 3). To the contrary, UMB argued

that there would be "limited areas of distinction" between its Motion and the motion filed by BOKF and, to the extent there were any, a "minimal" number of additional arguments. (UMB Dkt. No. 11 at 2.)

UMB has now adopted the same position that BOKF has—that it need not establish *either* that the challenged transactions were an out-of-court "restructuring," *or* that at the time of the transactions CEOC was unable to pay its debts. Likewise, UMB does not dispute on its Motion that the transactions released CEC's Guarantee under the governing Indentures, or that the purpose of the Guarantee, as understood by the market, was to allow consolidated financial reporting under SEC regulations rather than to provide credit support for the UMB Notes. For the reasons explained in CEC's opposition to BOKF's motion, there is no support in the statute or case law for the positions that UMB advances, and the effect of adopting UMB's (and BOKF's) theory would be to render unlawful countless routine and appropriate corporate transactions. There are, in any event, disputed issues of material fact at every level of the analysis that the motions require.

The Motion should be denied on the same grounds as those discussed in CEC's opposition to BOKF's motion, but CEC submits this separate opposition brief to address the limited number of factual issues and arguments specific to UMB. *First*, as explained further in CEC's opposition to BOKF's motion, the undisputed facts do not show that the Holders were "impaired" by the challenged transactions, but the recovery that the UMB Holders may receive on their Notes in the CEOC bankruptcy is even greater than the BOKF Holders. *Second*, CEC has diligently sought to obtain discovery from both the UMB and BOKF Holders, but thus far has not received any discovery from the UMB Holders that it has subpoenaed, and UMB, as the trustee, has produced no documents relevant to the issues on the Motion. Given the filing of

2

UMB's Motion less than two weeks after its Complaint—seeking, by itself, judgment as a matter of law on a claim purportedly in excess of $6.345 billion—a summary judgment in favor of UMB at this juncture would be even more inappropriate under Federal Rule of Civil Procedure 56(d), given CEC's inability to acquire discovery essential to its opposition.

## STATEMENT OF FACTS[1]

CEC incorporates by reference and respectfully refers the Court to the Statement of Facts contained in its opposition to BOKF's motion (*see* BOKF Resp. pp. 7-14), but notes the following facts pertaining to UMB and certain factual contentions that UMB alone has made.

### I. The Indentures and the Guarantee

The Indentures governing the UMB Notes are materially identical for purposes of these motions—as they pertain to the Guarantee of the UMB Notes, the release of the Guarantee (contained in Section 12.02(c) of the Indentures), and the restrictive covenants contained in the Indentures that make clear (as discussed further in CEC's opposition to BOKF's motion) that the Guarantee was not intended to provide credit support for the UMB (or BOKF) Notes.

As discussed in its opposition to BOKF's motion, CEC issued subpoenas to UMB and BOKF Holders, seeking documents and deposition testimony concerning (among other things) their understanding of the nature of the Guarantee and the Indentures' release provisions. (Adler Decl. ¶ 3.) As is relevant to UMB in particular, shortly after the filing of the Complaint, CEC issued subpoenas to seven UMB Holders, but five of them filed a pre-motion letter seeking to quash those subpoenas and/or for a protective order. (*Id.* ¶¶ 19-21.) On July 23, 2015, the Court held a conference on that application, at which time it reserved decision but directed CEC

---

[1] The facts and documents discussed in this opposition are provided in the same underlying declarations referenced in CEC's opposition to BOKF's motion. For ease of reference, CEC uses the same defined terms employed in that brief.

to submit revised subpoenas for the Court's review. (*Id*. ¶ 22.) The other two UMB Holders who have been subpoenaed have informed CEC that they will not produce documents in response to the subpoenas unless the UMB Holders who have sought to quash their subpoenas are unsuccessful. (*Id*. ¶ 21.) Given the materially identical language in the BOKF and UMB Indentures, and the overlap in relevant factual issues, discovery from each of the Holders is relevant to UMB's claim.

## II. The Challenged Transactions

The facts concerning the challenged transactions are provided in CEC's opposition to BOKF's motion (*see* BOKF Resp. pp. 11-13), but CEC notes two particular factual inaccuracies contained in the UMB Motion. First, contrary to the unsupported contention in UMB's brief, the 5% Stock Sale was not made to "CEC insiders" (UMB Br. 4), but to arm's length third parties who held equity in CEC or CEOC debt (Sambur Decl. ¶ 15). Second, UMB's brief describes the Participating Noteholders in the August Unsecured Notes Transaction—in what appears to have been a typographical error—as having "agreed to amend the First Lien Indentures governing the 2016 and 2017 Notes" (UMB Br. 8), but in fact, the UMB Indentures were not amended in connection with the transaction (Sambur Decl. ¶ 19).

UMB also appears to suggest in its brief that CEOC's election and notices to the trustee in June 2014 (following the May transactions) and August 2014 (following the August Unsecured Notes Transaction) that it had released the Guarantee, as the relevant notices reflect, were somehow improper because CEOC was "controlled" by CEC. (UMB Br. 11; *see also id.* at 4.) UMB presents no facts to support that contention, and the claim is, in any event, irrelevant to disposition of the Motion, since as UMB's own papers make clear, in order to prevail it must show that the challenged transactions violated the TIA.

4

### III. The Restructuring Support Agreement

As discussed in CEC's opposition to BOKF's motion, the RSA was the culmination of negotiations with CEOC's senior secured creditors and formed the basis of a plan for reorganization in CEOC's Chapter 11 case. (Sambur Decl. ¶¶ 22-23.) The holders of the UMB Notes are, however, differently situated from holders of the BOKF Notes under the terms of the RSA: In particular, if the plan contemplated by the RSA is approved, the UMB Holders will receive a combination of cash, newly-issued debt and equity in a reorganized CEOC valued at approximately 89 cents on the dollar. (*Id.* ¶ 23.)

Moreover, contrary to UMB's contention that CEOC "has not taken any steps towards confirmation" of the plan contemplated by the RSA (UMB Br. 8)—a contention that is unsupported by any facts whatsoever—negotiations among representatives of CEC, the debtors, and the debtors' creditors remain ongoing, in an effort to generate additional support for the plan. (Sambur Decl. ¶ 26.) Indeed, earlier this week, a deal was announced with certain second lien noteholders holding a significant amount of second lien CEOC debt that would, if it is supported by more than half of the relevant noteholders, provide them with a substantial improvement in recovery. (*Id.* ¶ 25.)

## ARGUMENT

CEC incorporates and respectfully refers the Court to the arguments made in opposition to BOKF's motion. (*See* BOKF Resp. pp. 15-34.) Those arguments apply, at a minimum, with equal force to UMB's Motion, but CEC addresses below additional facts and issues specific to UMB.

*First*, as explained in CEC's opposition to BOKF's motion, the undisputed facts do not establish that the UMB Holders were "impaired" by the challenged transactions. As UMB's Motion itself acknowledges, the plan effectuated by the RSA is merely a "proposed" one

and there is "no certainty" regarding the recovery that may ultimately be available to the UMB Holders (UMB Br. 16), contrary to the contention that the Guarantee provides their "sole practical recourse" and "last remaining avenue to recovery"—in the words used by BOKF and adopted by UMB (BOKF Br. 2). UMB separately characterizes the release of the Guarantee as denying the UMB Holders "a material and immediate source of recovery" (UMB Br. 15), but regardless, it is far from clear whether any of the Holders—including the UMB Holders—will receive more or less in the CEOC bankruptcy proceedings than they would receive through any claim on CEC's limited resources to satisfy the Guarantee, or that any such recovery would be more "immediate" than through the CEOC bankruptcy. In fact, under the plan contemplated by the RSA, the UMB Holders would receive approximately an 89 percent recovery (Sambur Decl. ¶ 23)—making UMB's contention that release of the Guarantee would "impair" its Holders even more debatable on the record before the Court.

Relatedly, UMB claims at one point in its brief that as of May 2014, CEC was itself "insolvent" (UMB Br. 2), though it fails to explain how (if at all) this is relevant to UMB's theory that it has been "impaired" as a result of the release of the Guarantee. Indeed, if the UMB Holders actually believed this to be true, it would establish that the Guarantee was of at best marginal value at the time. In any event, UMB provides no legal or factual analysis to properly support this contention. As a matter of law, as noted in CEC's opposition to BOKF's motion, determining whether a company is insolvent is inherently an issue of fact unsuited to summary judgment. And as a matter of fact, CEC had a market capitalization of approximately $2.6 billion at the end of the first quarter, was paying its debts when due, and had an unqualified opinion from its auditors. (Sambur Decl. ¶¶ 11, 21.) This renders UMB's contention—to the extent relevant to the Motion at all—disputed on the record before the Court.

*Second*, for the same reasons CEC explains in its opposition to BOKF's motion, UMB's Motion should be denied pursuant to Federal Rule of Civil Procedure 56(d) because CEC has had an insufficient opportunity to gather facts necessary to its opposition. Given the materially identical language in the UMB and BOKF Indentures, discovery from any of the Holders is relevant to UMB's claim, but there has been no discovery whatsoever provided by the UMB Holders that CEC has subpoenaed. Of the seven that were subpoenaed, five of them sought to quash the subpoenas. (Adler Decl. ¶¶ 18-20.) The Court directed CEC to submit revised subpoenas to the Court for its review. (*Id.* ¶ 21.) And as to the other two, despite CEC's diligent efforts, no documents have been produced to date. (*See id.* ¶ 22.) The information sought could very well raise a variety of genuine issues of material fact relevant to disposition of UMB and BOKF's motions, as explained more fully in CEC's opposition to the BOKF motion. That the BOKF and UMB Holders have objected or otherwise delayed in producing documents should not be allowed to prejudice CEC's ability to defend against the motions—including a motion brought, in the case of UMB, less than two weeks after the filing of its Complaint—that purport to seek a finding of liability on more than $7 billion worth of claims.

## **CONCLUSION**

For the reasons set forth above, UMB's Motion should be denied.

Dated: New York, New York
July 24, 2015

       PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

       By:     /s/ Lewis R. Clayton

         Lewis R. Clayton
         Michael E. Gertzman
         Jonathan H. Hurwitz
         Ankush Khardori
         1285 Avenue of the Americas
         New York, New York 10019-6064
         (212) 373-3000
         lclayton@paulweiss.com

       FRIEDMAN KAPLAN SEILER & ADELMAN LLP

       By:     /s/ Eric Seiler

         Eric Seiler
         Philippe Adler
         Jason C. Rubinstein
         7 Times Square
         New York, New York 10036-6516
         (212) 833-1100

       *Attorneys for Caesars Entertainment Corporation*